IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EVA MARIE FAIRBANKS, | Case No. 6:15-cv-02360-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, Magistrate Judge.**

Eva Marie Fairbanks ("Fairbanks") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") decision to grant Disability Insurance Benefits ("DIB") from October 4, 2012, through October 14, 2013, and to deny benefits thereafter. The Commissioner determined Fairbanks had been disabled during this closed period due to a spine disorder, but that her disability ceased on October 15, 2013, when she experienced a medical improvement related to her ability to work.[1] The principal issue on appeal is whether

---

[1] "In a closed-period case, the ALJ determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of the ALJ's decision." *Newbold v. Colvin*, 718 F.3d 1257, 1260 n.1 (10th Cir. 2013) (citation, quotations marks, and brackets omitted). Generally, "both the disability decision and the cessation decision

PAGE 1 – FINDINGS AND RECOMMENDATION

the Administrative Law Judge's ("ALJ") disability cessation decision is free of legal error and supported by substantial evidence. For the following reasons, the Court recommends that the district judge reverse the Commissioner's decision and remand for an award of benefits.

## BACKGROUND

Fairbanks was born in May 1955, making her fifty-seven years old on October 4, 2012, the start date of her disability period. Fairbanks is a high school graduate, and her past relevant work includes time as a dental assistant and medical office manager. Fairbanks alleges disability due primarily to a spine disorder. (*See* Tr. 48, explaining that Fairbanks is "pursuing" a "back claim," not a mental impairment).

Fairbanks has a longstanding history of back problems associated with her lumbar spine. She previously underwent a laminectomy, discectomy, and fusion at the L5-S1 region. (Tr. 213, 630.) More recently, Fairbanks was treating her back pain with epidural steroid injections on a quarterly basis. When Fairbanks presented for her epidural steroid injections on April 19 and July 26, 2012, she rated her back pain as a nine and eight, respectively, on a ten-point scale. (Tr. 292, 317.)

On October 4, 2012, the start of Fairbanks' disability period, she visited her primary care provider, Dr. Maria Wen-Yu ("Dr. Wen-Yu"), complaining of worsening back pain that radiated down her right leg. (Tr. 337.) Fairbanks reported that she had suffered from occasional bowel and bladder incontinence over the past month, had been leaving work early due to pain and medication needs, and was interested in being "on disability for short term." (Tr. 337-39.) A magnetic resonance imaging ("MRI") scan of the lumbar spine continued to show multilevel

---

are rendered in the same document." *Id.* (ellipses omitted); *see also Attmore v. Colvin*, 827 F.3d 872, 874 (9th Cir. 2016) (referring to "closed period" cases as ones "where the ALJ finds in a *single* decision that the claimant was disabled for a closed period of time but has since medically improved") (emphasis in the original).

degenerative disc disease, but did not reveal any "significant changes since [a] prior study." (Tr. 340.)

Fairbanks received an epidural steroid injection on November 15, 2012, and rated her pain as an eight on a ten-point scale. (Tr. 350.) That same day, Dr. Charles Lee ("Dr. Lee") referred Fairbanks to Neurosurgery for her "pain and associated fecal incontinence symptoms." (Tr. 352.)

On December 14, 2012, Fairbanks was evaluated by Dr. Thomas Sanchez ("Dr. Sanchez"), a member of the Neurosurgery Department at Kaiser Permanente. Fairbanks rated her pain as an eight on a ten-point scale, and reported experiencing six episodes of fecal incontinence. (Tr. 375-76.) Fairbanks added that her pain is aggravated by sitting, lying down for extended periods of time, squatting, not moving, and walking, and it is relieved by changing positions, medications, and massage. (Tr. 376.) In his records, Dr. Sanchez noted that there were unspecified areas of "possible concern on the MRI scan," but he was not able to see anything that might explain her episodes of fecal incontinence. (Tr. 382.) Dr. Sanchez informed Fairbanks that spine surgeons "may or may not" have an appropriate procedure to address her pain, but he agreed to provide a referral since she was "not doing well" with conservative treatment options. (Tr. 382.)

On December 24, 2012, Fairbanks was seen by Dr. Shayan Rahman ("Dr. Rahman"), another member of the Neurosurgery Department at Kaiser Permanente. After reviewing Fairbanks' MRI scans, Dr. Rahman declined to recommend surgical intervention, and noted that the etiology of Fairbanks' back pain was "likely multifactorial with contributions from degenerative joint/disc disease and post-surgical myofascial atrophy." (Tr. 394.) Dr. Rahman added that Fairbanks does not "have any severe central canal stenosis or impingement of her

PAGE 3 – FINDINGS AND RECOMMENDATION

right L5 or S1 nerve roots," and that the etiology of "her right L5/S1 radiculopathy is unclear." (Tr. 394.) Dr. Rahman recommended that Fairbanks "continue with conservative therapy and pain management." (Tr. 394.)

In January 2013, Fairbanks continued to complain of back pain that she rated as an eight or nine on a ten-point scale, although her bowel-related issues and function improved. (Tr. 409, 429, 439.) As a result, Fairbanks and Dr. Lee spoke about the possibility of a spinal cord stimulator.[2] (Tr. 430.) After beginning a spinal cord stimulator trial shortly thereafter, Fairbanks reported experiencing "excellent coverage of her pain symptoms," rating it as a four on a ten-point scale. (Tr. 507, 547.) Dr. Lee noted that the trial was "considered a success," as it reduced Fairbanks' pain by fifty percent, increased her daily functioning, and decreased her medication usage. (Tr. 547.)

On February 20, 2013, the Department of Disability Services referred Fairbanks to Dr. Birgit Siekerkotte ("Dr. Siekerkotte"), for an Independent Internal Medical Evaluation. (Tr. 233.) Based on her examination, Dr. Siekerkotte opined that Fairbanks can sit, stand, and walk for up to six hours in an eight-hour workday, lift and carry fifty pounds occasionally and twenty-five pounds frequently, frequently balance, and occasionally climb, stoop, kneel, crouch, and crawl. (Tr. 236.) Dr. Siekerkotte added that Fairbanks can only finger and feel on a frequent basis due to a generalized medication-related tremor, and needs to avoid working at heights and with heavy machinery. (Tr. 233, 236.)

---

[2] "A spinal cord stimulator is a device used to treat 'severe chronic nerve pain' that is unresponsive to conservative treatments, such as medication and physical therapy. 'A wire is placed within the spinal canal and connected to an electrical generator implanted beneath the skin in the abdomen,' and 'electrical pulses are directed along a nerve to block or override pain impulses traveling along same nerve.'" *Acosta v. Colvin*, No. 15-4051, 2016 WL 6952338, at *6 n.10 (S.D.N.Y. Nov. 28, 2016) (citation omitted).

PAGE 4 – FINDINGS AND RECOMMENDATION

On March 28, 2013, Dr. E. Cooper ("Dr. Cooper"), a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment. Dr. Cooper opined that Fairbanks can lift and carry fifty pounds occasionally and twenty-five pounds frequently, sit, stand, or walk for about six hours in an eight-hour workday, push and/or pull in accordance with her lift and carry restrictions, climb ramps and stairs without limitations, occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds, and frequently balance. (Tr. 63-64.) Dr. Cooper also opined that Fairbanks experiences limitations in fine manipulation due to generalized tremors and needs to avoid concentrated exposure to hazards, and that Fairbanks does not otherwise suffer from any visual, communicative, or environmental limitations. (Tr. 64-65.)

On April 26, 2013, approximately six months before the ALJ determined that Fairbanks' disability ceased, she had a permanent spinal cord stimulator implanted in her back. (Tr. 45, 588.) During a post-operative evaluation on May 3, 2013, Fairbanks rated her pain as a three on a ten-point scale, and noted that the spinal cord stimulator had reduced her pain by fifty percent. (Tr. 603.)

On July 10, 2013, Fairbanks established care with Dr. Gregory Grunwald ("Dr. Grunwald"), an Oregon-based doctor of osteopathic medicine. (Tr. 250, 263.) During her initial consultation, Fairbanks reported having a longstanding history of chronic lower back pain that radiates to her right foot and causes tingling and numbness. (Tr. 263-64.) Fairbanks also reported recently having a spinal cord stimulator implanted, which she hoped would help reduce her need for high doses of morphine and hydrocodone. (Tr. 253.) Dr. Grunwald noted that Fairbanks tested positive for marijuana, exhibited signs of pain in the back, right foot, right hip, and right leg, attempts to exercise on a daily basis "at a low level typically performing water exercises or

PAGE 5 – FINDINGS AND RECOMMENDATION

stretching exercises," signed a narcotics contract, and was able to squat without difficulty. (Tr. 264-65.)

Fairbanks returned to Dr. Grunwald's office on August 8, 2013. (Tr. 250, 262.) Fairbanks reported that she was "generally doing well" and her pain medications were "working adequately to control her pain," but she also believed that her spinal cord stimulator needed to be adjusted. (Tr. 262.) Dr. Grunwald noted that Fairbanks would continue on her current chronic pain management plan and medication dosages, and advised Fairbanks to continue performing "aqua therapy." (Tr. 263.)

During a follow-up visit on August 20, 2013, Dr. Grunwald completed workers' compensation-related paperwork that Fairbanks needed to submit to the State of Texas. (Tr. 250, 262.) In his treatment records, Dr. Grunwald noted that Fairbanks' chronic back pain "is disabling to the point where the patient is unable to perform activities to keep her gainfully employed." (Tr. 262.)

Also on August 20, 2013, Dr. Grunwald completed a Physical Medical Source Statement. (Tr. 244-47.) In his medical source statement, Dr. Grunwald indicated that Fairbanks suffers from "[v]ery severe" back pain that prevents her from doing many chores and causes her to need to "lay down a lot" and take medication that results in confusion and an inability to concentrate. (Tr. 244.) Dr. Grunwald also estimated that Fairbanks can sit for less than two hours in an eight-hour workday, stand or walk for about two hours in an eight-hour workday, rarely lift and carry ten pounds, frequently lift and carry less than ten pounds, rarely twist, stoop, or climb stairs, never climb ladders, and rarely to occasionally crouch or squat. (Tr. 246.) Dr. Grunwald also opined that Fairbanks suffers from limitations in her ability to reach, would need an at-will sit-

PAGE 6 – FINDINGS AND RECOMMENDATION

stand option at work, and would miss more than four days of work per month due to her impairments. (Tr. 245-46.)

Fairbanks' next visit with Dr. Grunwald took place on September 9, 2013. (Tr. 250, 259.) Fairbanks reported that her chronic back pain was "worse than last month," that her pain was "poorly controlled" on her current medication dosages, and that her medications had been taken from a lockbox at her residence. (Tr. 259-60.) Dr. Grunwald noted that Fairbanks tested positive for benzodiazepines and marijuana, explained that Fairbanks was in violation of her narcotics contract, suggested that Fairbanks "proceed to Allied health for evaluation for possible methadone treatment," and declined to refill Fairbanks' prescriptions, which made her "quite upset." (Tr. 260-61.)

When Fairbanks returned to Dr. Grunwald's office on October 14, 2013, her urinalysis was clean, and Dr. Grunwald agreed to continue with her pain management plan. (Tr. 250, 258-59.) The following month, Fairbanks informed Dr. Grunwald that her chronic pain condition was "unchanged" from previous visits, but she could nonetheless tolerate a reduction in her medication. (Tr. 256-57.)

On December 27, 2013, Fairbanks visited Dr. Grunwald and reported that her back condition was "somewhat improved," that she was stretching at home and using less hydrocodone, and that her spinal cord stimulator seemed "to be working well on her back." (Tr. 250, 254.) Dr. Grunwald encouraged Fairbanks to continue exercising and reducing her medication. (Tr. 255.)

Fairbanks presented for a follow-up visit with Dr. Grunwald on March 5, 2014. (Tr. 250, 252.) Fairbanks, who had spent the prior month in Arizona being treated by a different provider, reported that her condition had not changed. (Tr. 252.) Dr. Grunwald refilled Fairbanks'

PAGE 7 – FINDINGS AND RECOMMENDATION

prescriptions, noted Fairbanks did not test positive for any illicit substances, and stated that he was interested in having Fairbanks provide him with copies of her records from Arizona. (Tr. 252-54.)

During a follow-up visit on May 12, 2014, Fairbanks informed Dr. Grunwald that her chronic pain condition had not changed. (Tr. 630.) Fairbanks, however, acknowledged that she was "having less pain after moving her house" and might be able to further reduce her pain medication. (Tr. 630.)

On May 23, 2014, Dr. Grunwald issued a follow-up to his medical source statement, wherein he indicated that Fairbanks' conditions and limitations have not improved since August 20, 2013. (Tr. 625.)

The ALJ convened an administrative hearing on May 28, 2014, at which Fairbanks testified about the limitations resulting from her impairments. Fairbanks testified that she last worked as a dental office manager, a position in which she was responsible for handling the billing, bookkeeping, appointment scheduling, and office supply procurement. (Tr. 34-35.) Fairbanks stopped working when she could no longer handle a reduced schedule due to her back pain and inability to maintain concentration on higher levels of pain medication. (Tr. 35, 37.) Fairbanks testified that her primary barriers to employment are her inability to sit for more than forty-five minutes at a time due to pain, and her inability to maintain concentration when taking her pain medication. (Tr. 36, 42.) Fairbanks acknowledged that her back pain and need for pain medication has improved as a result of her spinal cord stimulator and epidural steroid injections, but she maintains that she still experiences considerable back pain that throbs and radiates down her leg and causes her to lie down throughout the day. (Tr. 37-40, 45-46.) In terms of daily activities, Fairbanks stated that is able to go shopping with her boyfriend, tend to her own

PAGE 8 – FINDINGS AND RECOMMENDATION

personal hygiene needs, cook small meals, and sweep occasionally, but she cannot vacuum and does not do the dishes. (Tr. 44.)

In a written decision issued on July 14, 2014, the ALJ applied the sequential evaluation processes set forth in 20 C.F.R. §§ 404.1520(a)(4) and 404.1594(f), and found that Fairbanks was disabled during a closed period of time due to a spine disorder. *See infra*. The Social Security Administration Appeals Council denied Fairbanks' petition for review, making the ALJ's decision the Commissioner's final decision. Fairbanks timely appealed to federal district court.

## THE EIGHT-STEP SEQUENTIAL ANALYSIS[3]

### I.    LEGAL STANDARD

"In cases such as this, where [the claimant] was found disabled for only a limited period of time, the ALJ uses an eight-step inquiry to determine whether disability benefits should be terminated based on the claimant's medical improvement." *Martz v. Comm'r Soc. Sec. Admin.*, 649 F. App'x 948, 954 (11th Cir. 2016) (citing 20 C.F.R. § 404.1594(f)). Those eight steps are as follows:

> (1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work,

---

[3] Two decision-making processes occur when, as here, an ALJ grants benefits for a closed period: (1) the ALJ finds the claimant disabled and grants benefits, applying the familiar five-step sequential evaluation process for assessing disability; and (2) the ALJ then applies a benefits-cessation analysis, applying the eight-step sequential evaluation process described more fully below. *See Newbold*, 718 F.3d at 1260-62 (so stating, and describing the processes). The Court addresses only the ALJ's application of the eight-step sequential evaluation process in this decision, because that process is the subject of Fairbanks' appeal.

PAGE 9 – FINDINGS AND RECOMMENDATION

whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

See, e.g., Dixon v. Barnhart, 324 F.3d 997, 1000-01 (8th Cir. 2003) (citing 20 C.F.R. § 404.1594(f)).

## II.    THE ALJ'S DECISION

The ALJ first determined that Fairbanks had not engaged in substantial gainful activity since October 4, 2012, the date of her disability onset. In the next step, the ALJ concluded that Fairbanks did not have an impairment or combination of impairments that met or equaled one of the listed impairments. The ALJ continued in the eight-step sequential analysis and found that there was medical improvement in Fairbanks' condition as of October 15, 2013. Next, the ALJ determined that Fairbanks' medical improvement was related to her ability to work, and that there had been an increase in Fairbanks' residual functional capacity ("RFC"). The ALJ then determined that Fairbanks' primary impairment (a spine disorder) was still severe, but that she had the RFC to perform (1) her past relevant work as a medical office manager, and (2) the jobs of admitting clerk and civil service clerk, based on the transferable skills acquired in her past relevant work. Accordingly, the ALJ determined that Fairbanks' disability ended on October 15, 2013.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might

PAGE 10 – FINDINGS AND RECOMMENDATION

accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* If the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

In this appeal, Fairbanks argues that the ALJ erroneously: (1) rejected her treating physician's (Dr. Grunwald's) follow-up opinion dated May 23, 2014; (2) rejected her subjective complaints regarding the intensity, persistence, and limiting effects of her symptoms after October 14, 2013; and (3) concluded that her medical improvement was related to her ability to perform substantial gainful activity. The Court addresses each of Fairbanks' alleged errors in turn.

### I.    DR. GRUNWALD'S OPINION

#### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v.*

PAGE 11 – FINDINGS AND RECOMMENDATION

*Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing specific and legitimate reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citation and quotation marks omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

      B.      **Application of Law to Fact**

Fairbanks argues that the ALJ failed to offer clear and convincing reasons for discounting the follow-up opinion issued by Dr. Grunwald on May 23, 2014, wherein he indicated that Fairbanks' conditions and limitations have not improved since August 20, 2013, the date Dr. Grunwald issued his medical source statement. The ALJ assigned Dr. Grunwald's medical source statement great weight in finding that Fairbanks was disabled from October 4, 2012, through October 14, 2013, and Fairbanks argues that Dr. Grunwald's medical source statement continued to deserve great weight for the period postdating October 14, 2013.

Upon review, the Court concludes that the ALJ erred in evaluating Dr. Grunwald's follow-up opinion. As an initial matter, the ALJ rejected Dr. Grunwald's opinion on the ground

PAGE 12 – FINDINGS AND RECOMMENDATION

that it is vague and ill-defined. (Tr. 18.) The Commissioner concedes that the ALJ erred in discounting Dr. Grunwald's follow-up opinion on this ground. (*See* Def.'s Br. at 5 n.2, declining to rely on the ALJ's statement that Dr. Grunwald's follow-up opinion was "rather vague and ill-defined" as a "valid reason," and arguing that the statement constituted harmless error).

The ALJ also rejected Dr. Grunwald's follow-up opinion on the ground that it is "not supported by the medical evidence of record as a whole, including his own observations on examinations." (Tr. 19.) This finding is not supported by substantial evidence, nor can it be reconciled with the ALJ's treatment of Dr. Grunwald's August 20, 2013 medical source statement.

The overwhelming majority of the medical evidence of record predates the period in which Fairbanks was found to be disabled. In fact, the opinions of Drs. Cooper and Siekerkotte and Fairbanks' treatment records from Kaiser Permanente all predate the issuance of Dr. Grunwald's medical source statement. That is significant because in finding Fairbanks disabled for a closed period, the ALJ (1) assigned great weight to Dr. Grunwald's medical source statement, (2) noted that his opinion was entitled to controlling weight under the Social Security regulations because it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record," (3) assigned "little weight" to the opinions of Drs. Cooper and Siekerkotte, and (4) noted that Dr. Grunwald's medical source statement was consistent with Fairbanks' treatment records from Kaiser Permanente. (Tr. 18-19.) Given the ALJ's treatment of Dr. Grunwald's medical source statement as compared to the other medical evidence of record, the Court concludes that it was inconsistent for the ALJ to reject Dr. Grunwald's follow-up opinion as "not supported by the medical evidence of record as a whole." (Tr. 19.) Indeed, Dr. Grunwald's follow-up opinion was

PAGE 13 – FINDINGS AND RECOMMENDATION

in effect an acknowledgment that the opinions he expressed in the medical source statement remained the same. The ALJ has already determined that those opinions were well-supported and not inconsistent with the other medical evidence in the record.

Further, Dr. Grunwald's observations regarding Fairbanks' physical examinations do not support the ALJ's finding. As the chart below illustrates, Dr. Grunwald's physical observations and treatment remained fairly consistent during both the period predating and postdating October 15, 2013:

| Date | Results of Physical Examination | Pain Medications Prescribed |
| --- | --- | --- |
| July 10, 2013 | Gait and station, heel and toe walking, and tandem gait within normal limits; squat 100%; lumber flexion 90°, extension 10°, and side bending 25°; palpation tenderness in the lumbar region; and motor strength rated 5/5. (Tr. 265.) | 40 milligrams of hydrocodone per day and 90 milligrams of morphine per day. (Tr. 265.) |
| August 8, 2013 | Gait and station, heel and toe walking, and tandem gait within normal limits; squat 100%; lumber flexion 80°, extension 20°, and side bending 30°; palpation tenderness in the lumbar region; and motor strength rated 5/5. (Tr. 263.) | 40 milligrams of hydrocodone per day and 90 milligrams of morphine per day. (Tr. 263.) |
| August 20, 2013 | Gait in station within normal limits; positive for chronic low back pain that "is disabling to the point where the patient is unable to perform activities to keep her gainfully employed." (Tr. 262.) | 40 milligrams of hydrocodone per day and 90 milligrams of morphine per day. (Tr. 261-62.) |
| September 9, 2013 | Gait and station within normal limits; and positive for bilateral hand tremor. (Tr. 260.) | Pain medications suspended 30 days due to a positive drug test. (Tr. 260-61.) |
| October 14, 2013 | Gait and station, heel and toe walking, and tandem gait within normal limits; squat 100%; lumber flexion 45°, extension 10°, and side bending 15°; palpation tenderness in the lumbar spine region; and motor strength rated 5/5. (Tr. 259.) | 40 milligrams of hydrocodone per day and 60 milligrams of morphine per day. (Tr. 259.) |

| Date | Results of Physical Examination | Pain Medications Prescribed |
|---|---|---|
| November 13, 2013 | Gait and station within normal limits. (Tr. 257.) | 30 milligrams of hydrocodone per day and 60 milligrams of morphine per day. (Tr. 258.) |
| December 27, 2013 | Gait and station, heel and toe walking, and tandem gait within normal limits; squat 100%; lumber flexion 90°, extension 15°, and side bending 30°; palpation tenderness in the lumbar region; and motor strength rated 5/5. (Tr. 255.) | 20 milligrams of hydrocodone per day and 60 milligrams of morphine per day. (Tr. 256.) |
| March 5, 2014 | Gait and station, heel and toe walking, and tandem gait within normal limits; squat 100%; lumber flexion 90°, extension 20°, and side bending 30°; palpation tenderness in the lumbar region; motor strength rated 5/5; and "[p]ositive for radiation of subjective pain into the right S1 dermatome." (Tr. 253.) | 20 milligrams of hydrocodone per day and 60 milligrams of morphine per day. (Tr. 254.) |
| May 12, 2014 | Gait and station, heel and toe walking, and tandem gait within normal limits; squat 100%; lumber flexion 80°, extension 20°, and side bending 25°; palpation tenderness in the lumbar region; motor strength rated 5/5; and "[m]ild lumbar muscle spasm L5-S1 bilateral." (Tr. 631.) | 20 milligrams of hydrocodone per day and 60 milligrams of morphine per day. (Tr. 631.) |

The foregoing demonstrates only that Fairbanks was able to tolerate some reduction in her pain medications (following implantation of the spinal cord stimulator), and that her degree of lumbar flexibility varied little over time. Dr. Grunwald's observations on his examinations of Fairbanks do not support the ALJ's rejection of Dr. Grunwald's follow-up opinion. From the Court's perspective, the ALJ's divergent treatment of Dr. Grunwald's opinion evidence cannot be reconciled. For these reasons, the Court finds that the ALJ committed reversible error.

///

///

## II.    CREDIBILITY DETERMINATION

### A.    Applicable Law

In the Ninth Circuit, absent an express finding of malingering, an ALJ must provide specific, clear, and convincing reasons for rejecting a claimant's testimony:

> Without affirmative evidence showing that the claimant is malingering, the [ALJ]'s reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 597 (9th Cir. 1999) (citations omitted). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

### B.    Application of Law to Fact

Here, the ALJ determined that (1) Fairbanks' medically determinable impairments could reasonably be expected to produce the alleged symptoms, (2) Fairbanks was significantly limited prior to October 15, 2013, and (3) Fairbanks' statements concerning the intensity, persistence, and limiting effects of her symptoms are consistent with the medical records from Kaiser

PAGE 16 – FINDINGS AND RECOMMENDATION

Permanente (i.e., the period in which Fairbanks was found to be significantly limited and thus disabled). As to the period postdating October 14, 2013, however, the ALJ determined that Fairbanks' statements were only "somewhat credible," in light of the "objective evidence" indicating that Fairbanks "improved significantly" after having a spinal cord stimulator implanted. (Tr. 18.)

Medical improvement is a clear and convincing reason for discounting a claimant's testimony; however, such a finding must be supported by substantial evidence. *Morales v. Astrue*, 300 F. App'x 457, 459 (9th Cir. 2008). In this case, the ALJ's reliance on medical improvement was not supported by substantial evidence. As discussed above, the record does indicate that Fairbanks' pain lessened and her pain medication dosage was reduced after having a spinal cord stimulator implanted. The medical records postdating October 14, 2013, however, fail to reveal any evidence that would support the conclusion that Fairbanks' condition "improved significantly," or improved to the degree that she could once again work. To be sure, Fairbanks' treating physician, Dr. Grunwald, opined that Fairbanks' condition and limitations had not improved since the time she was found to be disabled. In light of the errors committed by the ALJ in evaluating Dr. Grunwald's opinion, the Court concludes that the ALJ's reliance on medical improvement is not supported by substantial evidence in the record. *See Garrison*, 759 F.3d at 1018 ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.") (emphasis in the original).

## III.  MEDICAL IMPROVEMENT

Finally, Fairbanks argues that substantial evidence does not support the ALJ's finding of medical improvement. (*See* Pl.'s Br. at 14, "[T]he ALJ's finding that plaintiff's implantation

PAGE 17 – FINDINGS AND RECOMMENDATION

resulted in an increase in plaintiff's ability to perform work was not based on substantial evidence"). In this case, Dr. Grunwald was the only medical provider who treated Fairbanks after her disability allegedly ceased, and the ALJ erred in rejecting Dr. Grunwald's opinion that Fairbanks' condition and limitations had not improved. The ALJ also erred in discounting Fairbanks' testimony. Accordingly, the Commissioner has not met her burden of demonstrating medical improvement. *See McCalmon v. Astrue*, 319 F. App'x 658, 659 (9th Cir. 2009) ("The Commissioner bears the burden of establishing that a claimant has experienced medical improvement that would allow him to engage in substantial gainful activity").

## IV.   REMEDY

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Specifically, a district court should reverse and remand for an award of benefits when the following "credit-as-true" criteria are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id*. Even when these "credit-as-true" criteria are satisfied, however, district courts in this circuit retain the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*.

PAGE 18 – FINDINGS AND RECOMMENDATION

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting Dr. Grunwald's follow-up opinion and Fairbanks' testimony. Further, the ALJ would be required to find Fairbanks disabled on remand if Dr. Grunwald's improperly discredited evidence were credited as true. *See Garrison*, 759 F.3d at 1022 (holding that the claimant would be required to find the claimant disabled on remand, because such a conclusion followed directly from the court's "analysis of the ALJ's errors and the strength of the improperly discredited evidence").

Finally, the record has been fully developed and further administrative proceedings would serve no useful purpose. The record as a whole does not create serious doubt as to whether Fairbanks is, in fact, disabled. Accordingly, the Court recommends that the district judge reverse the Commissioner's decision and remand for an award of benefits. *See Hase v. Colvin*, No. 6:15–CV–01314–BR, — F. Supp. 3d — , 2016 WL 5107032, at *8 (D. Or. Sept. 19, 2016) (remanding for an award of benefits where improperly discredited medical opinion would support finding of disability if credited as true); *Altorfer v. Colvin*, No. 3:14-cv-1933-HZ, 2015 WL 9255544, at *14 (D. Or. Dec. 18, 2015) (remanding for an award of benefits where improperly discredited evidence would support disability finding); *Stinnett v. Colvin*, No. 14-906-SI, 2015 WL 8041930, at *2 (D. Or. Dec. 4, 2015) (concluding that further proceedings would serve no useful purpose where improperly discredited medical opinion supported a finding of disability); *Hall v. Colvin*, No. 6:14–cv–01410–PK, 2015 WL 6437197, at *14 (D. Or. Oct. 19, 2015) (Mosman, J.) (remanding for an award of benefits where the ALJ failed to credit the opinion of a treating physician, and where the ALJ would be required to find the claimant disabled on remand if the treating physician's opinion evidence were credited as true); *see also Schneider v. Colvin*, No. 1:14-cv-0034-SKO, 2015 WL 6081765, at *5-6 (E.D. Cal. Oct. 14, 2015) (holding that test for an award of benefits on remand was met where the ALJ erred in conducting medical

improvement analysis, and finding that "the Commissioner should not be given endless opportunities to correct her mistakes while Plaintiff waits for an error-free decision").

## CONCLUSION

For the foregoing reasons, the Court recommends that the district judge reverse the Commissioner's decision and remand for an award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23rd day of January, 2017.

/s/ Stacie F. Beckerman
_____
STACIE F. BECKERMAN
United States Magistrate Judge